IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES ex rel. DAVID HARRIS, | * | |
| DAVID HARRIS, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-17-0570 |
| | * | |
| ELLISON SYSTEMS, INC., | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION**</u>

Plaintiff David Harris ("Harris") filed a False Claims Act ("FCA") complaint, as *qui tam*

relator for the United States, against his former employer, Defendant Ellison Systems, Inc. d/b/a

"Shoplet" or "Shoplet.com" ("Shoplet").  ECF 1.  Recently, after the United States declined to

intervene in the action and requested that the Complaint be unsealed, Harris served Shoplet with

the Complaint.  Shoplet then filed a Motion to Dismiss, ECF 24 ("the Motion").  Harris opposed

the Motion, ECF 29, and Shoplet filed a reply, ECF 34.  No hearing is necessary.  *See* Loc. R.

105.6 (D. Md. 2018).  For the reasons that follow, the Motion will be granted, and Harris's claims

will be dismissed without prejudice.

## I.    FACTUAL BACKGROUND

The facts below are derived from the Complaint and are taken as true for purposes of this

Motion.  Shoplet is a New York corporation engaged in the business of selling office supplies over

the internet, using the website "shoplet.com."  ECF 1 ¶ 5.  Shoplet's customers include the United

States Government and, specifically, federal agencies located in Maryland.  *Id.* ¶¶ 6, 7.  In April,

2016, Harris began working for Shoplet, in Maryland, as its Senior Vice President of Sales.  *Id.*

¶¶ 11, 17, 20.  During Harris's employment, Shoplet was one of approximately twenty-four

1

companies authorized as vendors under the Federal Strategic Sourcing Initiative ("FSSI"). *Id.* ¶¶ 21, 23. The FSSI program intended to "streamline federal government purchases, lower costs and standardize purchase procedures," *id.* ¶ 22, by allowing federal contracting officers make FSSI purchases from authorized vendors. *Id.* ¶ 38. Office supplies sold under the FSSI program include those made by the AbilityOne program, which provides employment to individuals with "significant disabilities." *Id.* ¶ 25. The FSSI program requires federal contracting officers to purchase AbilityOne products if available.[1] *Id.* ¶ 28.

Authorized FSSI vendors must pay the program a "contract access fee" (CAF), consisting of a percentage of the goods sold under the program. *Id.* ¶ 30. The effective CAF for FSSI goods is 2%. *Id.* ¶¶ 31, 33, 35. For other GSA schedule goods, Shoplet pays just .75%. *Id.* ¶ 35. Generally, the FSSI price for an item is lower than the GSA schedule price for the same item. *Id.* ¶ 37. Shoplet sells products to federal government agencies under the GSA and FSSI programs. *Id.* at ¶ 43.

Shoplet maintains two websites: shoplet.com and gsa.shoplet.com. *Id.* ¶ 45. Shoplet.com sells products to retail customers and private businesses, while gsa.shoplet.com provides additional services to its federal government customers. *Id.* ¶¶ 5, 47. When Harris began working for Shoplet, its CEO, Tony Ellison, told him to focus on directing federal contracting officers to gsa.shoplet.com. *Id.* ¶ 44. However, after several months, an outside sales representative told Harris that the prices for goods on gsa.shoplet.com "weren't matching." *Id.* ¶ 48. While investigating that claim, Harris discovered that "gsa.shoplet.com was employing misleading and

---

[1] The Complaint is not a model of clarity. For example, Harris alleges the above-referenced facts about AbilityOne products, but then does not explain how those products relate to the alleged scheme. Further, while Harris at one point alleges "Shoplet pays GSA .75% for GSA schedule goods sold," *Id.* ¶ 35, he later refers to Hammermill paper as being "subject to the 2% GSA fee," *Id.* ¶ 57.

deceptive practices to induce Contracting Officers to pay higher, non-FSSI prices." *Id.* ¶ 50. According to Harris, a contracting officer might shop with Shoplet because it is an approved FSSI vendor, assuming that his agency would get the benefit of FSSI prices. *Id.* ¶ 51.

However, Harris alleges that Shoplet took certain steps to ensure that contracting officers would in fact pay the GSA pricing, which was more advantageous to Shoplet because of the higher prices and lower CAF. For example, Harris alleges that gsa.shoplet.com listed Hammermill recycled copy paper at a price of $41.29 per carton, when the FSSI price for the paper should be just $33.48, and the contracting officer should be able to obtain the item at the FSSI price. *Id.* ¶¶ 52, 55, 57. Harris alleges that Shoplet intentionally failed to place FSSI logos or GSA logos on its sales items, to conceal whether the item had been priced at the more favorable FSSI rate. *Id.* ¶ 63. According to the Complaint, "Upon information and belief, Shoplet made thousands of sales to the federal government under GSA pricing when it was required to provide FSSI pricing" and netted millions of dollars in illicit gains from that practice. *Id.* ¶¶ 64, 65. In August, 2016, Shoplet was removed as an authorized FSSI vendor, but continued to identify itself as an authorized vendor on the gsa.shoplet.com website. *Id.* ¶¶ 66, 67.

In or around August, 2016, Harris made a presentation to Shoplet's CEO, Tony Ellison, regarding the above-described findings and told Ellison that Shoplet's actions violated federal contracting laws. *Id.* ¶ 68. Days later, Shoplet terminated Harris's employment. *Id.* ¶ 73. This lawsuit ensued.

## II.   LEGAL STANDARD

Shoplet seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), which permits a defendant to test the legal sufficiency of a complaint. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221,

(2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set

4

forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ...

[the] actual proof of those facts is improbable and ... recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual

allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567

(4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  A court is

not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S.

265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  Ultimately, "[a] court decides whether [the

pleading] standard is met by separating the legal conclusions from the factual allegations,

assuming the truth of only the factual allegations, and then determining whether those allegations

allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A

Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937,

132 S.Ct. 1960, 182 L.Ed.2d 772 (2012).

## III.    ANALYSIS

### A.  FCA Claims

Counts I and II of the Complaint allege violations of § 3729(a)(1) of the FCA, which

proscribes knowingly presenting or causing to be presented a false or fraudulent claim for payment

or approval, or knowingly making, using, or causing to be made or used, a false record or statement

material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1).  Fraud claims under the FCA must

meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Harrison v.

Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see also United States ex*

*rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) ("Claims arising under 3729(a)(1)(A) and (B) of the FCA are fraud-based claims that must satisfy Rule 9(b)'s pleading standard.").

Harris's Complaint expressly alleges that Shoplet maintained two sets of prices and wrongfully took steps to steer contracting officers to website listings that would ask them to pay the higher pricing, when they were lawfully entitled to the more favorable pricing.  However, those allegations, absent more, do not suffice to state, with particularity, a claim for violation of § 3729(a)(1).  As the Fourth Circuit explained in *Grant*, "In order for a false statement to be actionable under either subsection of the FCA, it must be made as part of a false or fraudulent claim."  912 F.3d at 196.  "Claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property that . . . is presented to an officer, employee, or agent of the United States."  31 U.S.C. §§ 3729(b)(2)(A) & (A)(1).  The Fourth Circuit has described the "central question" as "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'"  *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86).

The requirement that presentment of a "false or fraudulent claim" to the government be pled with particularity is a stringent one.  Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the government."  *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).  Instead, a viable complaint must provide "some indicia of reliability" to support the notion that an actual false claim was presented to the

6

government.  *Id.*  That indicia can be provided in one of two ways.  First, a plaintiff can employ the usual method of pleading presentment with particularity, by "at a minimum, describ[ing] 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Grant*, 912 F.3d at 197 (quoting *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).  Alternatively, a plaintiff can "allege a pattern of conduct that would '*necessarily* have led[] to submission of false claims' to the government for payment."  *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457) (emphasis in original).

Harris's Complaint fails to allege any specific false claim that was presented to the government for payment.  The "example" it provides, using Hammermill recycled copy paper, does not include the time, place, or amount of any particular transaction in which a federal contracting officer actually purchased Hammermill paper at the non-FSSI price.  Further, even taken in the light most favorable to Harris, the Complaint does not allege a pattern of conduct that would *necessarily* have led to the presentment of false claims to the government for payment.  The Complaint, in less-than-clear fashion, appears to allege that Shoplet's websites advertised the same goods at two different prices, the GSA schedule pricing and the FSSI pricing, ECF 1 ¶ 59, and that Shoplet attempted to steer contracting officers to the higher-priced GSA schedule items.  *Id.* ¶ 62. As described, that scheme would not *necessarily* result in any contracting officer paying the higher prices—the contracting officer might recognize the discrepancy between Shoplet's own websites and refuse to pay the higher price, or the contracting officer might comparison shop with another FSSI vendor and purchase the product at the more reasonable price offered by that site.  Harris conclusorily alleges "upon information and belief" that "Shoplet made thousands of sales to the federal government under GSA pricing when it was required to provide FSSI pricing," without

providing any factual premise upon which that "information and belief" might be based. ECF 1 ¶ 64. Thus, the "upon information and belief" allegation does not add to the particularity of Harris's claims.

Because Harris's factual allegations leave open the possibility that the government did not make any actual payments at the fraudulent prices, his Complaint fails to meet the heightened pleading standard for FCA claims.  *See Grant*, 912 F.3d at 198 ("Accordingly, though Grant's allegations *could* have led to presentment, because the [complaint] fails to explain how United billed for its work or when the government paid for repairs, we cannot determine even from circumstantial allegations that United's conduct would have *necessarily* led to a false claim being submitted to the government for payment.").  Counts I and II therefore do not satisfy the Rule 9(b) "stringent requirement" of "pleading with particularity that there was a false claim and that the false claim was presented to the government for payment," and they are subject to dismissal without prejudice.  *Id.* at 200.

## B. FCA Retaliation

Count III asserts a claim under the retaliation provision of the FCA, which provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).  FCA retaliation claims are not subject to Rule 9(b)'s heightened particularity requirement, and "need only satisfy Rule 8(a)'s notice-pleading standard." *Grant,* 912 F.3d at 200. To "survive a motion to dismiss, a plaintiff must allege facts sufficient to support a 'reasonable

inference' of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." *Id.*

In order to establish that he engaged in protected activity, Harris had to plead that he engaged in an act "in furtherance of an [FCA action]" under the first prong, or "other efforts to stop 1 or more [FCA violations]" under the second prong of § 3730(h). He has not done so. He alleges that he notified Ellison, Shoplet's CEO, that Shoplet was violating federal contracting laws in order to "get Defendants to stop violating the False Claims Act." ECF 1 ¶¶ 69, 70. That assertion seems designed to invoke the second prong. As to the first prong, the facts Harris alleges do not support the notion that he informed Ellison of the results of his investigation "in furtherance of" the investigation, because Harris fails to explain how sharing that information with Ellison would further his potential FCA claim. Moreover, while he includes language in Count III suggesting that "Plaintiff threatened to disclose to a public body an activity, policy, or practice of the person that the Plaintiff reasonably believed is in violation of the False Claims Act," ECF 1 ¶ 87, his Complaint supplied no facts to substantiate that assertion.

Turning to the second prong, the allegations in the Complaint do not contain sufficient facts regarding the timeline of events to permit a reasonable inference that Shoplet was still engaged in the alleged FCA violations as of the time of Harris's presentation to Ellison. The Complaint alleges that, during the month of August 2016, Harris made his presentation, and Shoplet was also removed as an authorized FSSI vendor. ECF 1 ¶¶ 66, 68. The sequence of those two events is not specified. The Complaint further alleges that after its FSSI status was stripped, Shoplet continued to identify itself as an FSSI vendor on the gsa.shoplet.com website. *Id.* ¶ 69. The duration of that misidentification is similarly not provided. Without more specific dates, the Court cannot ascertain whether, as of the time of Harris's presentation to Shoplet's CEO, Shoplet still enjoyed

authorized vendor status, or alternatively whether it represented itself as holding such status despite having it revoked. If neither of these situations existed at the time of the presentation, Harris could not plausibly allege "efforts to stop 1 or more violations" of the FCA via his presentation to Ellison, since the alleged scheme is contingent upon Shoplet's use or representation of FSSI authorized vendor status to deceive contracting officers into paying higher-than-FSSI rates. Although plausibility is a low bar, the lack of *any* specific facts as to timing—while remediable via amendment—leaves the timeline of events, and thus the viability of Plaintiff's claims, entirely to speculation. As currently pled, then, Harris's Complaint does not state a plausible FCA retaliation claim in Count III, although Harris will have the opportunity to amend his allegations to remedy the deficiency.

## IV.    CONCLUSION

For the reasons set forth above, Shoplet's Motion to Dismiss the Complaint, ECF 24, will be GRANTED, but Harris's claims will be dismissed without prejudice, and Harris will be afforded twenty-one days to file a motion for leave to amend. If no such motion is filed, the dismissal will be with prejudice, and this case will be closed. A separate Order follows.

Dated:  November 2, 2020                                /s/
                                             Stephanie A. Gallagher
                                             United States District Judge