**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES ex rel. DAVID HARRIS, | * | |
| DAVID HARRIS, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-17-0570 |
| | * | |
| ELLISON SYSTEMS, INC., | * | |
| | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

After his initial complaint was dismissed, Plaintiff David Harris ("Harris") filed an Amended Complaint alleging violations of the False Claims Act ("FCA"). ECF 46. Harris's former employer, Defendant Ellison Systems, Inc. d/b/a "Shoplet" or "Shoplet.com" ("Shoplet"), again filed a Motion to Dismiss ("the Motion"), ECF 47. Harris opposed the Motion, ECF 50, and Shoplet filed a reply, ECF 51. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted in part and denied in part.

I.      **FACTUAL BACKGROUND**

The facts below are derived from the Amended Complaint and are taken as true for purposes of this Motion. Shoplet is a New York corporation engaged in the business of selling office supplies over the internet, using the website "shoplet.com." ECF 46 ¶ 5. Shoplet's customers include the United States Government and, specifically, federal agencies located in Maryland. *Id.* ¶¶ 6, 7. In April, 2016, Harris began working for Shoplet, in Maryland, as its Senior Vice President of Sales. *Id.* ¶¶ 11, 17, 20. During Harris's employment, Shoplet was one of approximately twenty-four companies authorized as vendors under the Federal Strategic Sourcing Initiative ("FSSI"). *Id.* ¶¶ 21, 23. The FSSI program intended to "streamline federal government

1

purchases, lower costs and standardize purchase procedures," *id.* ¶ 22, by allowing federal contracting officers make FSSI purchases from authorized vendors. *Id.* ¶ 38. Office supplies sold under the FSSI program include those made by the AbilityOne program, which provides employment to individuals with "significant disabilities." *Id.* ¶ 25. The FSSI program requires federal contracting officers to purchase AbilityOne products if available.[1] *Id.* ¶ 28.

Authorized FSSI vendors must pay the program a "contract access fee" (CAF), consisting of a percentage of the goods sold under the program. *Id.* ¶ 30. The effective CAF for FSSI goods is 2%. *Id.* ¶¶ 31, 33, 35. For other GSA schedule goods, Shoplet pays just .75%. *Id.* ¶ 35. Generally, the FSSI price for an item is lower than the GSA schedule price for the same item. *Id.* ¶ 37. Shoplet sells products to federal government agencies under the GSA and FSSI programs. *Id.* at ¶ 43.

Shoplet maintains two websites: shoplet.com and gsa.shoplet.com. *Id.* ¶ 45. Shoplet.com sells products to retail customers and private businesses, while gsa.shoplet.com provides additional services to its federal government customers. *Id.* ¶¶ 5, 47. When Harris began working for Shoplet, its CEO, Tony Ellison, told him to focus on directing federal contracting officers to gsa.shoplet.com. *Id.* ¶ 44. However, after several months, an outside sales representative told Harris that the prices for goods on gsa.shoplet.com "weren't matching." *Id.* ¶ 48. While investigating that claim, Harris discovered that "gsa.shoplet.com was employing misleading and deceptive practices to induce Contracting Officers to pay higher, non-FSSI prices." *Id.* ¶ 50. According to Harris, a contracting officer might shop with Shoplet because it is an approved FSSI vendor, assuming that his agency would get the benefit of FSSI prices. *Id.* ¶ 51.

---

[1] Despite this Court pointing out several confusing or inconsistent allegations in the original Complaint, ECF 35 at 2 n.1, the Amended Complaint made no effort to clarify or correct them.

However, Harris alleges that Shoplet took certain steps to ensure that contracting officers would in fact pay the GSA pricing, which was more advantageous to Shoplet because of the higher prices and lower CAF. For example, Harris alleges that gsa.shoplet.com listed Hammermill recycled copy paper at a price of $41.29 per carton, when the FSSI price for the paper should be just $33.48, and the contracting officer should be able to obtain the item at the FSSI price. *Id.* ¶¶ 52, 55, 57. The Amended Complaint contains several charts illustrating the differences between the FSSI prices and GSA prices for various items and noting that the use of the commonly utilized part number to search for the item would lead a prospective purchaser to the GSA price, not the FSSI price. *Id.* ¶¶ 61, 62, 66. Harris alleges that Shoplet intentionally failed to place FSSI logos or GSA logos on its sales items, to conceal whether the item had been priced at the more favorable FSSI rate. *Id.* ¶ 65. According to the Amended Complaint, "Upon information and belief, Shoplet made thousands of sales to the federal government under GSA pricing when it was required to provide FSSI pricing" and netted millions of dollars in illicit gains from that practice. *Id.* ¶¶ 66, 71. Harris learned of the situation via calls from Shoplet sales representatives, who informed Harris that their government customers had been misquoted prices as a result of their use of the common part numbers. *Id.* ¶ 68. Harris knew that such communications between the sales representatives and government customers occurred "frequently between June 2016 and August 2016." *Id.* ¶ 70.

Between June, 2016 and August, 2016, Harris complained to Shoplet's CEO, Tony Ellison, and other officers about the dual pricing scheme. *Id.* ¶ 73. Harris believed, and expressed to the officers, that Shoplet's pricing scheme violated the False Claims Act. *Id.* ¶¶ 73-74.

On or about August 8, 2016, Shoplet was removed as an authorized FSSI vendor, but continued to identify itself as an authorized vendor on the gsa.shoplet.com website. *Id.* ¶¶ 75, 77,

78.  Harris alleges that as of the time of his termination and continuing into November, 2016, Defendant continued to make sales to officers of "various products, including the Hammermill paper described above." *Id.* ¶¶ 77-78.  A Shoplet employee, Ed Miller, advised Harris after Harris's termination that Shoplet was continuing to identify itself as an FSSI vendor to government contracting officers.  *Id.* ¶ 80.

In late August, 2016, Harris made another presentation to Shoplet's CEO, Tony Ellison, regarding the above-described findings and again told Ellison that Shoplet's actions violated federal contracting laws.  *Id.* ¶¶ 82-85.  Harris specifically told Ellison that the company needed to stop identifying itself as an FSSI vendor, and that its dual numbering system continued to cause overbilling to the government.  *Id.* ¶ 85.  Ellison responded by accusing Harris of being "a spy in the organization" and asked whether he had "been telling company secrets to the General Services Administration."  *Id.* ¶ 93.  Ellison told Harris that he had not hired him "to be a compliance officer."  *Id.* ¶ 97.  Days later, Ellison terminated Harris's employment.  *Id.* ¶ 106.  This lawsuit ensued.

## II.    LEGAL STANDARD

Shoplet seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), which permits a defendant to test the legal sufficiency of a complaint.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221, (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). That said, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  A court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.    ANALYSIS

### A.  FCA Claims

In Counts I and II of the Amended Complaint, Harris allege as a relator that Shoplet engaged in violations of § 3729(a)(1) of the FCA.  That provision proscribes knowingly presenting or causing to be presented a false or fraudulent claim for payment or approval, or knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1).  Fraud claims under the FCA must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see also United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) ("Claims arising under 3729(a)(1)(A) and (B) of the FCA are fraud-based claims that must satisfy Rule 9(b)'s pleading standard.").

Like the original Complaint, Harris's Amended Complaint expressly alleges that Shoplet maintained two sets of prices and wrongfully took steps to steer contracting officers to website listings that would ask them to pay the higher pricing, when they were lawfully entitled to the more

favorable pricing.  However, those allegations, absent more, still do not suffice to state, with particularity, a claim for violation of § 3729(a)(1).  As the Fourth Circuit explained in *Grant*, "In order for a false statement to be actionable under either subsection of the FCA, it must be made as part of a false or fraudulent claim."  912 F.3d at 196.  "Claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property that . . . is presented to an officer, employee, or agent of the United States."  31 U.S.C. §§ 3729(b)(2)(A) & (A)(1).  The Fourth Circuit has described the "central question" as "whether the defendant ever presented a false or fraudulent claim to the government, resulting in a 'call upon the government fisc.'"  *Grant*, 912 F.3d at 196 (quoting *Harrison*, 176 F.3d at 785-86).

The requirement that presentment of a "false or fraudulent claim" to the government be pled with particularity is a stringent one.  Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the government."  *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).  Instead, a viable complaint must provide "some indicia of reliability" to support the notion that an actual false claim was presented to the government.  *Id.*  That indicia can be provided in one of two ways.  First, a plaintiff can employ the usual method of pleading presentment with particularity, by "at a minimum, describ[ing] 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Grant*, 912 F.3d at 197 (quoting *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).  Alternatively, a plaintiff can "allege a pattern of conduct that would '*necessarily* have led[] to submission of false

claims' to the government for payment." *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457).

The new factual allegations contained in the Amended Complaint do not help it to meet those standards, because it still fails to allege any specific false claim that was presented to the government for payment.  The Amended Complaint adds to its original example of Hammermill recycled copy paper by listing a series of other products marketed with different GSA and FSSI product numbers.  *See* ECF 46 at ¶¶ 61, 66.  However, the Amended Complaint remains devoid of the time, place, or amount of any particular transaction in which a federal contracting officer *actually purchased* any product at a non-FSSI price.  Once again, even taken in the light most favorable to Harris, the Complaint does not allege a pattern of conduct that would *necessarily* have led to the presentment of false claims to the government for payment.

The Amended Complaint alleges that Shoplet's websites advertised the same goods at two different prices, the GSA schedule pricing and the FSSI pricing, and that Shoplet attempted to steer contracting officers to the higher-priced GSA schedule items by using a dual numbering system. As described, that scheme would not *necessarily* result in any contracting officer paying the higher prices—the contracting officer might recognize the discrepancy between Shoplet's own websites and refuse to pay the higher price, or the contracting officer might comparison shop with another FSSI vendor and purchase the product at the more reasonable price offered by that site.  In fact, Harris's own allegations suggest that contracting officers had a number of calls with Shoplet's sales representatives "regarding the mismatched pricing," *id.* at ¶¶ 68-69, suggesting that at least some government representatives were not deceived.  The Amended Complaint, like the original version, conclusorily alleges "upon information and belief" that "Shoplet made thousands of sales to the federal government under GSA pricing when it was required to provide FSSI pricing," and

alleges that it continued to make sales misrepresenting itself as an FSSI authorized entity after it had been terminated.  *Id.* at ¶ 67.  However, no actual sales, or "calls upon the government fisc" have been identified with particularity.

Because Harris's factual allegations do not specify that the government made any actual payments at less favorable or fraudulent prices, his Amended Complaint fails to meet the heightened pleading standard for FCA claims.  *See Grant*, 912 F.3d at 198 ("Accordingly, though Grant's allegations *could* have led to presentment, because the [complaint] fails to explain how United billed for its work or when the government paid for repairs, we cannot determine even from circumstantial allegations that United's conduct would have *necessarily* led to a false claim being submitted to the government for payment.").  Counts I and II, even as amended, do not satisfy the Rule 9(b) "stringent requirement" of "pleading with particularity that there was a false claim and that the false claim was presented to the government for payment."  *Id.* at 200.  It seems apparent, after two attempts, that Harris lacks sufficient detail about Shoplet's actual transactions to state an FCA claim with particularity, and instead intended to rely on discovery to gather information to make his case.  The requirement that a § 3729(a)(1) claim be pled with particularity, though, is not relaxed in such circumstances.  *See Nathan,* 707 F.3d at 458 (acknowledging "the practical challenges that a relator may face in cases such as the present one, in which a relator may not have independent access to records such as prescription invoices, and where privacy laws may pose a barrier to obtaining such information without court involvement.  Nevertheless, our pleading requirements do not permit a relator to bring an action without pleading facts that support all the elements of the claim.").  Like in *Nathan,* where the relator asked the Court to infer that prescriptions had been filled and claims had been presented to the government for reimbursement, Harris here as relator asks this Court to infer that government contractors purchased products

without obtaining the benefit of FSSI pricing.  In the absence of such transactions being pled with particularity, however, his § 3729(a)(1) claims are insufficient and must be dismissed.

### B.  FCA Retaliation

Like in the original complaint, Count III of the Amended Complaint asserts a claim under the retaliation provision of the FCA, which provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).  FCA retaliation claims are not subject to Rule 9(b)'s heightened particularity requirement, and "need only satisfy Rule 8(a)'s notice-pleading standard." *Grant,* 912 F.3d at 200. To "survive a motion to dismiss, a plaintiff must allege facts sufficient to support a 'reasonable inference' of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." *Id.* The allegations in the Amended Complaint, taken as true for purposes of a motion to dismiss, are sufficient to meet those standards.

The Amended Complaint alleges that Harris engaged in activity, specifically his late August 2016 presentation to Ellison, with the intent to stop one or more FCA violations by advising Ellison of the various FCA violations he believed to be ongoing.[2]  The Amended Complaint clarifies the timeline of events, making clear that as of the time of the late August meeting, Shoplet

---

[2] The fact that this Court has determined, in Counts One and Two, that Harris did not adequately meet the Rule 9(b) pleading standards for an FCA violation does not mean that Harris lacked a reasonable belief that Shoplet was engaged in such violations.  The allegations he has made in Count Three suffice under the less demanding notice pleading standards.

had been removed from the FSSI program, but was continuing to represent itself as an FSSI vendor on the website.  ECF 46 at ¶¶ 75-78.  Finally, the Amended Complaint alleges that Ellison responded to Harris's presentation by accusing him of serving as a spy, before terminating him days later.  *Id.* at ¶¶ 93-106.  Thus, it relies not only on temporal proximity to suggest causation, but on Ellison's own verbal response to Harris's presentation.

Shoplet contends that the presentation to Ellison was made at Ellison's request as part of Plaintiff's regular duties.  Because Harris had to make the presentation to fulfill his job duties, Shoplet posits, Harris's motivation was not to try to stop one or more violations of the FCA.  ECF 47-1 at 12-13.  That type of factual dispute about motivation is inappropriate for resolution at the motion to dismiss stage.  Similarly, Shoplet's assertion that Harris was otherwise failing to meet performance goals and standards, *id.*, is not appropriately considered at this stage of the proceeding.  Taking the facts as alleged by Harris as true, he has plausibly stated an FCA retaliation claim, and the Motion will be denied as to Count Three.  Of course, Shoplet will be free to advance its version of the facts through discovery and in any eventual motion it may file seeking summary judgment.

IV.    **CONCLUSION**

For the reasons set forth above, Shoplet's Motion to Dismiss the Amended Complaint, ECF 47, will be GRANTED as to Counts One and Two and DENIED as to Count Three.  A separate Order follows.


Dated:  February 26, 2021                                  /s/
                                                 Stephanie A. Gallagher
                                                 United States District Judge